**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Daniel W. TETZLAFF, Sr.,**
**Defendant–Appellant.**

**No. 89–2175.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 30, 1990.

Decided Feb. 28, 1990.

Jeffrey Anderson, Asst. U.S. Atty., Office of the U.S. Atty., Madison, Wis., for plaintiff-appellee.

Stephen J. Meyer, Vanmetre, Hanson & Meyer, Madison, Wis., for defendant-appellant.

Before CUMMINGS and POSNER, Circuit Judges, and PELL, Senior Circuit Judge.

CUMMINGS, Circuit Judge.

Defendant-appellant Daniel Tetzlaff pleaded guilty to the last Count of a five-count indictment against him involving narcotic sales. Count V charged him with the December 3, 1987 possession of 500 grams of cocaine with intent to distribute pursuant to 21 U.S.C. § 841(a)(1). Tetzlaff was sentenced to 69 months in prison, to be followed by a four-year period of supervised release, and he was fined $12,000. He appeals, objecting to the district court's decision to increase his base offense level for playing a primary role in the offense under § 3B1.1(c) of the United States Sentencing Commission Guidelines, reproduced in n. 2 *infra*. Because the district court improperly applied that Section, we remand the case for resentencing.

## I.

## BACKGROUND

In August 1987, Tetzlaff and his son, Daniel, Jr., returned to Hayward, Wisconsin, after residing in Florida for several years. Before leaving, Tetzlaff purchased an ounce of cocaine, which he planned to sell to pay for future travel expenses. In Hayward, Tetzlaff and Daniel, Jr. sold several small packages of the cocaine to undercover drug agents. On one occasion, Daniel, Jr. and Tetzlaff's daughter, Lisa, sold the agents a small amount of marijuana. The agents requested larger quantities of cocaine, and Tetzlaff obliged them by flying to Florida on December 1, 1987, where he obtained over 500 grams of cocaine. Once he was back in Hayward on December 3, 1987, the agents orchestrated a buy from Tetzlaff in his apartment and arrested him. Tetzlaff's children had no involvement in this last transaction.

Tetzlaff, Daniel, Jr., and Lisa were indicted by a federal grand jury for the Western District of Wisconsin. Count I charged Tetzlaff and Daniel, Jr. with distributing one gram of cocaine. Count II charged them with distributing ⅛ ounce of cocaine. Count III charged Daniel, Jr. and Lisa with distributing ¼ ounce of marijuana. Count IV charged Tetzlaff with distributing one gram of cocaine. Finally, Count V charged Tetzlaff with possession with intent to distribute the approximately 500 grams of cocaine he obtained in Florida. The five counts of the indictment alleged violations of 21 U.S.C. § 841(a)(1), and Counts I, II, and III also alleged violations of 18 U.S.C. § 2 as to aiding and abetting. Tetzlaff pleaded guilty to Count V of the indictment pursuant to an agreement with the government under which Counts I, II, and IV were dropped.

## II.

## SENTENCING

Originally the district court granted Tetzlaff's motion to prohibit the use of the Sentencing Guidelines based upon prior decisions holding the Guidelines unconstitutional. On April 29, 1988, the district court sentenced Tetzlaff under pre-guidelines law to a fifteen-year term of imprisonment, to be followed by three years of supervised release, and a $12,000 fine. Tetzlaff appealed, and this Court remanded the case for resentencing pursuant to the Guidelines. *United States v. Tetzlaff*, No. 88-1915, unpublished order at 2 (7th Cir. April 26, 1989 [873 F.2d 1443 (table)]) (citing *Mistretta v. United States*, 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989)).

Tetzlaff's base offense level was determined to be 26, based on one ounce of marijuana and 530.37 grams of cocaine, including cocaine seized in his apartment on December 3. The district court added two levels for his supposedly being a "manager" pursuant to Guidelines § 3B1.1(c), applicable to an organizer, leader, manager, or supervisor in a criminal activity. See n. 2 *infra*. For acceptance of responsibility, it reduced Tetzlaff's offense level by two pursuant to Guidelines § 3E1.1(a). The court applied this total offense level of 26 to a so-called criminal history category of I applicable to a person without a prior criminal record. This resulted in an imprisonment range of 63 to 78 months for Tetzlaff.

At the resentencing hearing on May 30, 1989, the district court sentenced Tetzlaff

to a 69–month term of imprisonment, to be followed by four years of supervised release, and a $12,000 fine. The court gave the following reasons for imposing the two level increase under Guidelines managerial § 3B1.1(c):

> The defendant engineered the commission of all of the five offenses alleged in the indictment, recruited as accomplices his children, a son and a daughter, Daniel, Jr. and Lisa. He received a larger share, if not the entire share, of the fruits of the crimes, and participated in its planning and organization. I believe a reading of those paragraphs [5, 6, 7, and 9] previously brought to the court's attention by the presentence report to which the court has referred in this decision is adequate without going any further to set forth the management of the defendant. The nature and scope of the illegal activity as previously set forth in the presentence report by the defendant was extensive. The degree of control, authority exercised by this defendant over the co-defendants, his son and daughter, were extensive, and the defendant's criminal activity in association with him in order to facilitate the offenses, leads this court to believe that this defendant's management and control was the reason the offenses were committed, and certainly cannot be suggested to be minimal.

This timely appeal followed entry of the district court's judgment.

Tetzlaff argues that the record is silent on any recruitment of Lisa, and that Tetzlaff did not recruit or manage his son in his illegal activities. In the alternative, Tetzlaff argues that any joint criminal activity between him and his son ended prior to November 1, 1987, the effective date of the Guidelines, and may not be used to increase his offense level. Finally, Tetzlaff argues that he worked alone in committing the crime charged in Count V and could not be a manager under Guidelines § 3B1.1(c).

# III.

## ANALYSIS

### A. Overlap of Sentence Range of Level 24 and Level 26

Where the sentence falls within either of two arguably applicable Guidelines ranges and it is clear that the same sentence would have been imposed under either Guidelines range, the court need not resolve the dispute. *United States v. Bermingham*, 855 F.2d 925, 930–931 (2d Cir.1988); see also Guidelines Ch. 1, Part A, Introduction 4(h). Where it appears that the district judge chose a sentence because he incorrectly thought it was at the low end of the applicable Guidelines range, the court of appeals should remand for proper resentencing. See *e.g., United States v. Vasquez*, 874 F.2d 250, 252 (5th Cir.1989).[1]

In this case, Tetzlaff was subjected to an offense level of 26 and a criminal history category of I, which, as noted, carries a range of 63 to 78 months imprisonment. The district court chose a mid-range 69–month term. Without the two point managerial enhancement under Guidelines § 3B1.1(c), Tetzlaff would face a range of 51 to 63 months imprisonment. This Court must proceed to consider whether it was proper to apply Section 3B1.1(c) to the defendant.

### B. Two–Point Enhancement for Tetzlaff's Role in the Offense

In general, the Guidelines permit a sentencing court to consider reliable information beyond that relating to the offense of conviction. For example, Guidelines § 1B1.3 requires the sentencing court to take account of "relevant conduct" where appropriate in the Guidelines scheme. Therefore, a court is within its authority to rely on such information in determining the appropriate base offense level within the applicable Guidelines range, see Guidelines § 1B1.4, or in determining the appropriate base level within a Guideline which pro-

1. There the district judge gave a 97–month sentence because it was the minimum for offense level 30. On appeal it developed that a 97– month sentence was the maximum for the correct offense level 28.

vides for multiple offense levels. See Guidelines § 2D1.1; see also *United States v. Wright,* 873 F.2d 437 (1st Cir.1989); *United States v. Fernandez,* 877 F.2d 1138, 1141–1142 (2d Cir.1989). Because the primary question in this case is whether the district court should have applied Guidelines managerial § 3B1.1(c), the court need not address Tetzlaff's arguments concerning the reliability of the "relevant conduct" information available to the district court.

 The problem with the sentence imposed by the district court is that it applied Guidelines § 3B1.1(c) to a defendant who was convicted of the Count V offense that only involved himself. Guidelines § 3B1.1(c) requires the sentencing judge to look at "the defendant's role in the *offense*" of conviction, here Count V, not his role in any relevant aggravating *conduct* in which he may have engaged. Further, the elements of the offense enhanced under Guidelines § 3B1.1(c) must include the participation of more than one person or else the district court cannot weigh the relative culpability of the parties.

The plain language of Guidelines § 3B1.1 requires that the sentencing court focus on the "defendant's role in the offense," rather than other criminal conduct.[2] See *United States v. Williams,* 891 F.2d 921, 925 (D.C.Cir.1989) (increase under Guidelines § 3B1.1(c) is improper where defendant was convicted of possession of a sawed-off shotgun, but found to be a "manager" of a "crack house" based on an offense for which he was not convicted); *United States v. Nuno–Para,* 877 F.2d 1409, 1413 (9th Cir.1989) (Guidelines provide for a number of upward adjustments from the base level, "including the defendant's role in the offense of which he was convicted"). Guidelines § 3B1.1 provides a range of ad-

justments to increase the offense level based upon the size of the criminal organization (*i.e.* the number of participants) and the degree to which the defendant was responsible for committing the offense. Guidelines § 3B1.1, and Introductory Commentary; *United States v. Herrera,* 878 F.2d 997, 999 (7th Cir.1989).

The focus in Guidelines § 3B1.1 on the offense rather than other criminal conduct is consistent with the statutory scheme. While Guidelines § 3B1.1(c) allows the sentencing court to increase the offense level if the defendant was an "organizer," "leader," "manager," or "supervisor," see *Herrera,* 878 F.2d at 999, Guidelines § 3B1.2 allows the court to decrease the offense level if the defendant was a "minimal" or "minor" participant.[3] The introductory commentary to these two sections states that "[w]hen an *offense* is committed by more than one participant, § 3B1.1 or § 3B1.2 (or neither) may apply." The Guidelines do not otherwise provide for "role in the offense" adjustments, except when the defendant abused a position of trust or used a special skill in committing the offense. See Guidelines § 3B1.3. In delimiting the "role in the offense" adjustment in this fashion, the Sentencing Commission explicitly recognized that many offenses are committed by a single individual or by individuals of roughly equal culpability, and that "none of them receive an adjustment under this Part." Guidelines § 3B1.4 Commentary; *Williams,* at 925.

In other sections, the Guidelines distinguish between relevant conduct and the offense of conviction. *Williams,* at 925. Relevant conduct is defined as "all acts and omissions committed or aided and abetted by the defendant, for which the defendant would be otherwise accountable, that occurred during the commission of the of-

---

2. Guidelines § 3B1.1 provides:
 Based on the defendant's role in the *offense,* increase the offense level as follows:
 (a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.
 (b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more

participants or was otherwise extensive, increase by 3 levels.
 (c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.
 (emphasis added).

3. See Guidelines § 2B1.2(a) and (b).

fense of conviction, in preparation for that offense, or ... that otherwise were in furtherance of that offense." Guidelines § 1B1.3(a). As a rule of construction, courts must focus on all relevant conduct and not just conduct included in the offense, but only "in the absence of more explicit instructions in the context of a specific guideline." Guidelines § 1B1.3 Background; *Williams*, at 926. The Commission has provided more explicit guidance in Guidelines § 3B1.1 by focusing on the defendant's role in the offense.

In considering the defendant's participation in the offense, Guidelines § 3B1.1 requires that the offense involve more than one participant. A Guidelines § 3B1.1 adjustment can only be considered when the defendant has a role in the offense for which "relative responsibility" can be allocated. *Williams*, at 926; see Guidelines § 3B1.1 Background; see also *United States v. Daughtrey*, 874 F.2d 213, 216 (4th Cir.1989). A sentencing court obviously cannot determine relative responsibility if the offense is committed by one person.[4]

The discussion in *Herrera*, the only decision in this Circuit yet to address Guidelines § 3B1.1, exemplifies the rule that to be applicable, the offense must involve more than one participant. In *Herrera*, Federal drug agents arrested the defendant and his wife at Chicago's Union Station while they were carrying almost 5,000 grams of cocaine. 878 F.2d at 998. The defendant pleaded guilty to one count of possession of cocaine with intent to distribute and one count of interstate travel in aid of a racketeering enterprise involving narcotics; his wife pleaded guilty to a lesser charge. *Id.* We upheld the determination that the defendant was an "organizer" pursuant to Guidelines § 3B1.1(c) in part due to the defendant's control over his wife. *Id.* at 1002. Judge Manion wrote that "Mrs. Herrera acted at Herrera's behest and did what she was told. Further, Mrs. Herrera testified that at the time of her arrest, she was not even sure if her luggage contained cocaine, and that Herrera had never specifically told her she was carrying narcotics." *Id.* The *Herrera* court properly weighed the relative culpability of the husband and wife in that two-person drug operation when it assessed the increased sentence of the defendant under Guidelines § 3B1.1(c).

No such balancing is possible in the present case, because Tetzlaff acted alone in the offense for which he was convicted. Tetzlaff negotiated the drug transaction with the federal agents, contacted his source in Florida, flew down to pick up the cocaine, and delivered it to the agents in Wisconsin. His children had no role in this transaction. Because his conviction of possession of cocaine with intent to distribute the 500 grams did not involve more than one participant, the district court had no cause to allocate relative responsibility and improperly assessed the two-level increase. See *Williams*, 891 F.2d at 926; *United States v. Foster*, 876 F.2d 377 (5th Cir. 1989) (court remanded a district court sentence because the sentencing judge, pursuant to Guidelines § 3B1.3, had increased the defendant's offense level by two points for conduct not relevant to "the offense").

## IV.

## CONCLUSION

For these reasons, pursuant to 18 U.S.C. § 3742(f)(1) we REMAND for resentencing

---

**4.** If the offense involves more than one participant, this Court gives due deference to the district court's decision to adjust the offense level upward or downward under §§ 3B1.1 or 3B1.2. See 18 U.S.C. § 3742(e); *United States v. Herrera*, 878 F.2d 997, 999 (7th Cir.1989). The district court is in the best position to assess the defendant's relative culpability vis-a-vis other participants in the offense. See *id.* at 1000; see also *United States v. Haynes*, 881 F.2d 586 (8th Cir.1989) (conspiracy to distribute cocaine; organizer in drug distribution scheme); *United States v. Diaz–Villafane*, 874 F.2d 43, 49 (1st Cir.), certiorari denied, —— U.S. ——, 110 S.Ct. 177, 107 L.Ed.2d 133 (possession with intent to distribute heroin; "manager"); *United States v. Mejia–Orosco*, 867 F.2d 216 (5th Cir.), certiorari denied, —— U.S. ——, 109 S.Ct. 3257, 106 L.Ed.2d 602 (manager of illegal transportation of aliens into the United States); cf. *United States v. Wright*, 873 F.2d 437, 442–443 (1st Cir.1989) (no downward adjustment under Guidelines § 3B1.2, because the defendant was not a minimal participant since he alone possessed the cocaine and no other participant was needed to complete the offense).

without the Guidelines § 3B1.1(c) adjustment.